**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JOSEPH MICHAEL RIZZO,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **THE CITY OF WHEATON, Wheaton Police** ) <br> **Officer ED HASAN, Wheaton Police** ) <br> **Officer CLIFFORD DILLON, Wheaton** ) <br> **Police Officer MICHAEL SCHUMAKER,** ) <br> **The Wheaton Police Chief MARK FIELD,** ) <br> **The City of Wheaton Manager DON ROSE,** ) <br> ) <br> **Defendants.** ) | **No. 09 C 4945** <br><br> **Judge Rebecca R. Pallmeyer** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Joseph Michael Rizzo, brings this action pursuant to 42 U.S.C. § 1983 against the State of Illinois, the City of Wheaton, and Wheaton Police Officers Ed Hasan, Michael Schumaker, and Clifford Dillon, in their official and individual capacities. Plaintiff claims that his Fourth and Fourteenth Amendment rights against unreasonable search and seizure were violated when Defendants entered his home and seized him without a warrant and without consent. Plaintiff further alleges he was arrested for a felony when his offense only classified as a misdemeanor. The court dismissed the State of Illinois and the City of Wheaton on initial review of Plaintiff's amended complaint [26]. Defendants Hasan, Schumaker and Dillon have now moved for summary judgment on all claims. For the reasons set forth below, the motion is granted.

**FACTUAL BACKGROUND[1]**

On September 25, 2008, three City of Wheaton police officers–Defendants Ed Hasan, Michael Schumaker, and Clifford Dillon–went to the home of Plaintiff Joseph Michael Rizzo with the

---

[1] Defendants have filed a Local Rule 56.1 Statement [65] and provided Plaintiff with the warning contemplated by Local Rule 56.2 [66]. Plaintiff has substantially complied with the Local Rule, as well, furnishing a response to Plaintiff's 56.1 Statement [70]. The facts are drawn from these submissions and supporting documents.

purpose of arresting Rizzo on public indecency charges. (Plaintiff's Rule 56.1 Statement of Material Facts (hereinafter "Pl.'s 56.1 Statement") at ¶¶ 1, 2.) Rizzo resided at 26 W. 080 Roosevelt Road, in Wheaton, Illinois.[2] (*Id.* at ¶ 5.) The building at this location is a split-level house with six bedrooms, each of which is available for rent–three in the basement and three on the second floor. (*Id.* at ¶ 6; Defendants' Rule 56.1(a)(3) Statement of Material Facts (hereinafter "Defs.' 56.1 Statement") at ¶ 10.) As of September 25, 2008, two of the upstairs bedrooms and two of the downstairs bedrooms were occupied. (*Id.* at ¶ 12.)

Plaintiff Rizzo rented one of the bedrooms on the second floor of the house. An individual named Kyle, last name unknown, rented the other second-floor bedroom, and two basement bedrooms were rented by Gary Moore and Ken Schneider. (Pl.'s 56.1 Statement ¶ 9; Defs.' 56.1 Statement at ¶ 12.) The entrance to the main floor was located at the front of the house and there was a back entrance that led to the basement. (Defs.' 56.1 Statement ¶¶ 13, 14.) A door that can be locked connects the basement to the living room of the house. Rizzo claims that residents of the basement bedrooms were not permitted on the main floor. (Rizzo Dep. 19, Ex. A to Defs.' 56.1 Statement.) The building owner, Thomas Schmerold, however, testified at his deposition that building residents were not permitted in one another's bedrooms, but all of the building's residents were permitted to use the living room, dining room and kitchen on the main floor. (Schmerold Dep. 17-18, 27, Ex. E to Defs.' 56.1 Statement.) Every resident was also allowed to have guests. (Defs.' 56.1 Statement ¶ 17.)

On September 25, 2008, the Wheaton Police Department received a phone call from a neighbor who lived across the street from Rizzo's residence. The neighbor reported she had observed Rizzo standing in the exterior doorway of his house, naked from the waist down, holding his erect penis in his hand and masturbating while staring at her. (*Id.* at ¶ 19; Schumaker Aff. ¶¶

---

[2] A number of exhibits refer to 28 W. 080 Roosevelt Road, Wheaton, Illinois. *See, e.g.*, Hasan Aff., Ex. B to Defs.' 56.1 Statement.

3, 4, Ex. C to Defs.' 56.1 Statement.) Defendants and several other police officers responded to the call. (Defs.' 56.1 Statement ¶ 20.) Defendants did not have a warrant for Rizzo's arrest. (*Id.* at ¶ 21.) On arrival at Rizzo's residence, Officer Hasan went to the rear of the house while other officers knocked on the front door. (*Id.* at ¶ 22.) While Hasan stood at the rear of the house, Ken Schneider, one of the basement bedroom residents, exited the house from the back door. (*Id.* at ¶ 23.) Officer Hasan explained his presence there and asked Mr. Schneider if he could come inside to talk to Rizzo. (*Id.* at ¶ 24.) Mr. Schneider allowed Officer Hasan into the house and directed him to Rizzo's bedroom on the upstairs level. (*Id.* at ¶¶ 25, 26.)

After a sergeant advised Officer Dillon that a resident had consented to police entry, Dillon entered the house through the front door. (*Id.* at ¶ 28.) As Detective Dillon entered the house, he saw, standing in the living room with other officers, a man whom he understood to be one of the residents and who directed him to Rizzo's bedroom. (*Id.* at ¶ 29.) Around this time, Officer Schumaker knocked on the front door of the house and was allowed entry by a man whom he understood to be a resident of the house. (*Id.* at ¶ 30.) Officer Schumaker stood at the base of the stairs while Officers Hasan and Dillon proceeded upstairs and down a hallway to Rizzo's bedroom. (*Id.* at ¶ 31.)

The door to Rizzo's bedroom was closed and Rizzo was inside. (*Id.* at ¶ 32.) The police officers knocked on the door and yelled, "Rizzo, come out of the room, we know you're in there, or else we won't leave." (*Id.* at ¶¶ 33, 34.) Rizzo testified at his deposition that he opened the door because the officers were yelling loudly at him; he had no specific memory of any physical contact from the officers, and Defendant officers have all denied having any contact with Rizzo before he stepped out of his bedroom. (Rizzo Dep. 57, 58; Hasan Aff. ¶¶ 11, 12, Ex. B to Defs.' 56.1; Schumaker Aff. ¶¶ 9, 10, Ex. C to Defs.' 56.1 Statement; Dillon Aff. ¶¶ 10, 13, Ex. D to Defs.' 56.1 Statement.) At Officer Hasan's direction, he walked down the hallway and down to the first floor. Then, after speaking with the officers, he walked outside with them. (Defs.' 56.1 Statement ¶¶ 37,

3

38.)

The neighbor who called in the complaint had told Officer Schumaker that she wanted to sign a complaint against Rizzo for public indecency. (Defs.' 56.1 Statement ¶ 39.) Once outside the house, the police informed Rizzo they were placing him under arrest. (*Id.* at ¶¶ 40, 41.) Officer Hasan contacted the DuPage County State's Attorney for screening of the case as a felony because he was aware that Rizzo had a history of arrests for public indecency and similar misconduct within the City of Wheaton and surrounding communities. (Hasan Aff. ¶17.)[3] On September 26, 2008, the DuPage County State's Attorney authorized felony charges against Rizzo. (Felony Complaint, Ex. F to Defs.' 56.1 Statement.) On October 23, 2008, a grand jury indicted Rizzo on felony public indecency charges. (Indictment, Ex. G to Defs.' 56.1 Statement.) The charges against Rizzo were later lowered to a misdemeanor; though Rizzo does not know precisely how this happened, he acknowledges that it was a product of efforts on the part of the Public Defender who represented him. (Defs.' 56.1 Statement ¶ 48; Rizzo Dep. 55-56, Ex. A to Defs.'s 56.1 Statement.) On February 5, 2009, a jury convicted Rizzo of a Class A misdemeanor public indecency charge, and he was sentenced to 364 days in the county jail. (Criminal Sentence Order, Ex. H to Defs.' 56.1 Statement.) Rizzo was incarcerated from September 25, 2008 through March 24, 2009. (*Id.* at ¶ 50.)

## DISCUSSION

Summary judgment is appropriate if the materials in the record demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.

---

[3] Rizzo disputes that Defendants contacted the State's Attorney for a screening of his case but has offered no evidence during discovery to support his allegations, and the criminal complaint against Rizzo shows that the DuPage County State's Attorney authorized felony charges against him on September 26, 2008. *See* Felony Complaint, Ex. F to Defs.' 56.1 Statement.

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). The mere existence of an alleged factual dispute between the parties, however, will not defeat a properly supported motion for summary judgment where there is no *genuine* issue of material fact–a fact that might affect the outcome of the suit under applicable substantive law. *See East-Miller v. Lake County Highway Department*, 421 F.3d 558, 561-62 (7th Cir. 2005) (citing *Anderson*).

### A. Claim of Unlawful Entry

Rizzo initially claims that Defendants entered his home without a warrant and without consent in violation of his Fourth and Fourteenth Amendment rights. The record, however, does not support Rizzo's allegations.

The Fourth Amendment prohibits warrantless searches and seizures, but a warrantless entry is not prohibited where someone with actual or apparent authority has consented. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). A third party with common authority over the premises may consent to the police entry into the common areas. *United States v. Aghedo*, 159 F.3d 308, 310 (7th Cir. 1998); *see also United States v. Conception*, 942 F.2d 1170, 1172 (7th Cir. 1991) (defendant had no expectation of privacy in common areas where other tenants use the space and were permitted to have visitors). In this case, it is undisputed that Defendant Hasan obtained consent to enter the house from one of its residents, Mr. Schneider. Rizzo admits that Schneider occupied one of the rooms in the basement of the house, but alleges that he was not allowed on the main floor and therefore lacked authority to consent to the officer's entry. This allegation is contradicted by the record: Thomas Schmerold testified that basement residents were permitted not only to use the basement but also to access the common living areas on the main floor and to have guests. In any event, regardless what was in fact permitted in the building, Defendant Hasan had no reason to believe that his entry was unauthorized. He correctly understood that Mr. Schneider was a resident of the house. He saw Mr. Schneider come out of the

back door, and after Hasan asked for permission to enter the premises, Mr. Schneider did not indicate in any way that he lacked authority to consent. Thus, even if Rizzo could establish that Schneider had no actual authority to permit entry to the home, there can be no dispute that Schneider had apparent authority to do so.

Nor is the court troubled by the other officers' entry into the residence. Defendant Dillon entered the premises only after his sergeant told him that a resident of the house had consented to the police's entry. (Dillon Aff. ¶ 5.) Defendant Schumaker entered the house only after he knocked on the front door and was allowed to answer by the person who answered, a resident of the house. (Schumaker Aff. ¶ 6.) A warrantless entry is lawful when based on consent given by a third party whom the police, at the time of entry, reasonably (even if erroneously) believe to possess common authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 186, 188-89 (1990); *United States v. Henderson*, 536 F.3d 776, 780 (7th Cir. 2008) (citing *Rodriguez*). It was reasonable for Dillon and Schumaker to believe that a person in plain clothes, who answers the door and allows them to enter, and who stands and talks with other police officers in the living room, is a resident of the house with authority to permit them to enter. Rizzo himself does not contend that someone other than a resident let Defendants into the house; he only asserts that Defendants should have ascertained the identity of the individual who let them in. He cites no authority for such a requirement, however, and the court concludes that regardless of the identity of the individual(s) who gave consent, Officers Dillon and Schumaker reasonably relied on his (or their) apparent authority to enter.

Rizzo advances one other argument: that, because each bedroom in the residence was rented separately, Rizzo's bedroom was his "house," and Defendants violated his Fourth Amendment rights by knocking on his bedroom door. Rizzo characterizes his bedroom door as his "terminable property" and asserts that Defendants "touched his effects without a warrant" in violation of the Fourth Amendment when they knocked on his door. This claim is meritless. Police

6

officers are in fact required to knock and announce their presence before entering a home.  *See Wilson v. Arkansas*, 514 U.S. 927, 934 (1995); s*ee also, e.g., Leaf v. Shelnutt*, 400 F.3d 1070, 1082 (7th Cir. 2005).  And although he complains of an unlawful search, there is no evidence that any search took place.  Defendants are entitled to summary judgment on Plaintiff's claim of unlawful entry.

### B. Claim of Unlawful Seizure

Rizzo also alleges that Defendants, after entering his home without a warrant and without consent, seized him "with a loud vocal restraint," in violation of his Fourth and Fourteenth Amendment rights.

Absent exigent circumstances, the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a person's home in order to make a routine arrest. *Payton v. New York*, 445 U.S. 573, 576 (1980) (felony arrests); *Welsh v. Wisconsin*, 466 U.S. 740, 753, 754 (1984) (same rule for misdemeanor arrests).  As already explained, Defendants' entry into Rizzo's home was lawful because other residents of the house had given consent.  And Rizzo concedes that his arrest took place outside of his home, though he claims the seizure happened when the police questioned him and asked him to accompany them outside.  Rizzo is correct that, short of an arrest, a person can be seized within the meaning of the Fourth Amendment if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.  *California v. Hodari D.*, 499 U.S. 621, 628-29 (1991); *Carlson v. Bukovic*, 621 F.3d 610, 620 (7th Cir. 2010).

Rizzo has not established any dispute of fact about whether such a seizure took place in this case.  Questioning by police about suspected criminal activity, by itself, is unlikely ever to amount to a seizure.  *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984); *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002) ("Posing a question does not meet the Supreme Court's definition of a seizure.").  The record here shows that Rizzo voluntarily stepped outside his room and walked

outside the house at the officers' request, when he could have simply refused. *See McKinney v. George*, 726 F.2d 1183, 1188 (7th Cir. 1984) (no constitutional violation where plaintiff opened the door to the police's knock, they asked him to come along with them, and he did so).

Rizzo believes that Defendants' request that he step outside constitutes a seizure because doing so did not originate from Rizzo's own free will. He offers no evidence that Defendants used or threatened the use of any physical force, however.[4] Rizzo complied with the Defendants' request when he could have simply refused, and the fact that the idea to go outside originated from Defendants is not enough for a finding of coercion. Notably, as Rizzo acknowledges, the police made no attempt to arrest him while inside the house, instead effecting the arrest only after he stepped outside.

Rizzo nonetheless claims that he was placed under arrest "on the house property," more specifically, in the curtilage of his home, and that this was a seizure within the meaning of *Payton*. Again, prevailing law defeats this argument. The warrantless arrest of an individual in a public place upon probable cause does not violate the Fourth Amendment. *United States v. Watson*, 423 U.S. 411, 423 (1976). The doorway of the house is the limit where a "public place" begins for purposes of the Fourth Amendment. *United States v. Santana*, 427 U.S. 38, 42 (1976) (under cases interpreting the Fourth Amendment, there is no expectation of privacy beyond the threshold of one's home or in the front yard; these are public places for purposes of an arrest). Rizzo's references to case law defining the "curtilage" of the home are not helpful because they address the Fourth Amendment's restrictions on warrantless search, not arrests. *See, e.g.*, *Oliver v. United States*, 466 U.S. 170 (1984). Because Rizzo was in a public place at the moment of his arrest, and (as explained below) the police had probable cause to arrest him, there was no unlawful seizure.

---

[4] Plaintiff does not remember whether there was any physical contact between him and any of the police officers while they were inside the house, *see* Rizzo Dep. 58, 63-64, and the officers themselves have denied it. Instead, Plaintiff insists that the police seized him "with a loud vocal restraint" by yelling and asking him to accompany them outside.

### C. Claim of Wrongful Arrest

Rizzo's challenge to the arrest fares no better. Plaintiff believes Defendants violated his Fourth and Fourteenth Amendment rights by arresting him for a felony when his offense only qualified as a misdemeanor. The felony charge was reduced to a misdemeanor (apparently as a result of defense counsel's efforts) before Rizzo was tried and convicted, but Rizzo argues he suffered great emotional distress thinking he was facing felony charges. He also alleges that Defendants failed to contact the State's Attorney to have his arrest examined and that his "papers were violated when Dillon signed the complaint" to arrest him, in violation of his Fourth and Fourteenth Amendment rights. (Pl.'s 56.1 Statement ¶ 4.)

None of these circumstances violated the Constitution. There was ample probable cause for the arrest: Defendants arrested Rizzo only after a neighbor stated that she wanted to sign a complaint against him for public indecency, after questioning Rizzo himself about this incident, and after noting that Rizzo had a prior record of conviction for public indecency. *See Henry v. United States*, 361 U.S. 98, 102 (1959) (probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed); *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) ("To prevail on a claim for false arrest, the plaintiff must show there was no probable cause for his arrest. If probable cause to arrest is found to exist, it is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest."). An officer who arrests someone with probable cause is not liable for false arrest simply because the suspect is later found innocent. *Anderson v. Creighton*, 483 U.S. 635, 663-64 (1987). And the fact that the charge against Rizzo was later reduced to a misdemeanor does not defeat the conclusion that Defendants had probable cause to arrest him. In any event, a full custodial arrest may be appropriate even for a minor offense, *see Atwater v. City of Lago Visa*, 532 U.S. 318, 121 S. Ct. 1536 (2001), and it is the State's Attorney, not the arresting officer, who decides what charges to bring against a particular arrestee. *See, e.g.*, *People v. O'Mahoney*, 169 Ill. App. 3d 194, 199, 523

N.E.2d 635, 638 (5th Dist. 1988).

Rizzo believes Defendants had an obligation to contact the State's Attorney before charging him at all. To the court's knowledge, the Constitution does not impose such an obligation, but assuming that it does, the record demonstrates the police officers did in fact contact the DuPage County State's Attorney, who authorized felony charges on September 26, 2008, within 24 hours of Rizzo's arrest. The record also shows that Rizzo was indicted by a grand jury on felony charges. The fact that the charge was later reduced to a misdemeanor–apparently as a result of the Public Defender's efforts–does not alter the conclusion that the arrest was proper.

## **CONCLUSION**

There are no disputes of fact concerning the circumstances of Plaintiff's arrest and Defendants are entitled to judgment as a matter of law. Their motion for summary judgment [63] is granted; Plaintiff's motion for summary judgment [58] is denied. A status conference is set for Monday, April 11, 2011, at which time Plaintiff is directed to appear and be prepared to explain what claims, if any, in his proposed Third Amended Complaint survive this ruling.

ENTER:

Dated: March 23, 2010

_____
REBECCA R. PALLMEYER
United States District Judge